CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

December 6, 2019

LETTER TO COUNSEL

RE: *Olan M. v. Commissioner, Social Security Administration*
Civil No. DLB-18-3056

Dear Counsel:

On October 4, 2018, Plaintiff Olan M. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claim for Supplemental Security Income. ECF 1. I have considered the parties' cross-motions for summary judgment. ECF 14, 17. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

After previous denials, Plaintiff protectively filed his claim for benefits on January 15, 2016, alleging an onset date of June 10, 2014. Tr. 208. His claim was denied initially and on reconsideration. Tr. 147-50, 154-55. A hearing was held on February 7, 2018, before an Administrative Law Judge ("ALJ"). Tr. 34-65. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 10-19. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "obesity, seizure disorder by history, schizophrenia, and anxiety by history." Tr. 12. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium exertional level work with the following limitations: the claimant cannot engage in climbing or work at unprotected heights or around dangerous machinery. The claimant should not be exposed to extreme temperatures. The claimant is limited to simple, repetitive non-production job tasks in a low stress environment, with only occasional interactions with coworkers, supervisors, or the general public.

Tr. 14. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform his past relevant work as a deckhand or dock hand, but could perform other jobs existing in significant numbers in the national economy. Tr. 18-19. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 19.

Plaintiff makes one primary argument on appeal: that the ALJ erroneously assessed his RFC. ECF 14-1 at 5-11. Specifically, Plaintiff challenges the ALJ's RFC discussion narrative, evaluation of the relevant evidence, and inclusion of the undefined term "non-production job tasks" in his RFC. *See id*. I agree that the ALJ's RFC assessment was inadequate for the reasons discussed below. In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

First, Plaintiff argues that the ALJ failed to "build an accurate and logical bridge" from the evidence to his conclusions. ECF 14-1 at 5 (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). An ALJ is required to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p) (quotation marks removed).

Here, the ALJ concluded that "the medical evidence of record generally does not support the claimant's alleged loss of functioning." Tr. 16. For support, the ALJ noted:

> The objective medical findings show predominately mild to moderate exam findings, supporting a conclusion that the claimant's symptoms are moderate at worst. The claimant's treatment has been conservative, consisting entirely of prescription medication and outpatient therapy. The claimant has never been hospitalized for any psychiatric reason. Additionally, the claimant has extensive activities of daily living, including: attending church every Sunday, socializing with family, attending the Go Getters program twice a week, using public transportation, playing video games, watching TV, listening to music, sweeping the floor, taking out the trash, and cutting the grass.

*Id*. (citations removed).

The Commissioner asserts that the ALJ "based the RFC assessment on a careful examination of the evidence in the record" and cites to the paragraph above to show that the ALJ provided sufficient explanation for his conclusion. ECF 17-1 at 4-5. On the surface, it may seem that the ALJ's explanation, including references to Plaintiff's medical treatment and nonmedical activities, built the requisite bridge from evidence to conclusion. However, the ALJ misstated the record. While the ALJ asserted that Plaintiff's treatment had "consist[ed] entirely of . . . outpatient therapy" and that he had "never been hospitalized for any psychiatric reason,"

the record contains two such hospitalizations during the relevant time period: September 11, 2014, through September 16, 2014, for "psychotic behavior" and October 23, 2014, through October 27, 2014, for "paranoid behavior." *See* Tr. 324-474. The ALJ supported his erroneous statement with a citation to a psychiatric evaluation conducted on December 9, 2015. Tr. 16 (citing to Tr. 860). It is unclear why the evaluation contained incorrect information about Plaintiff's psychiatric treatment, *see* Tr. 860 ("Pt. was never hospitalized for psychiatric reason"), or why the ALJ did not mention or discuss the hospitalizations. A large portion of the record (approximately a quarter of the medical evidence) is comprised of psychiatric hospitalization notes, *see* Tr. 324-474, and those hospitalizations were discussed in the opinions of both State agency consultants, Tr. 120, 135-36, to which the ALJ gave "great weight," Tr. 16.

It does not appear, nor does the Commissioner argue, that the ALJ was merely exercising his right to weigh conflicting evidence. *See, e.g.*, *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].") (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Rather, the ALJ explicitly misstated the record. Because the ALJ relied on Plaintiff's lack of hospitalization for his conclusion that Plaintiff was not disabled, I cannot determine whether his conclusion is supported by substantial evidence.

Plaintiff additionally argues that the ALJ failed to properly evaluate a note from a State agency consultant, Tr. 124 ("[Plaintiff's] anxiety around others would interrupt his work pace and distract him somewhat"), a note from an SSA Claims Representative, Tr. 240 ("claimant had difficulty answering simple questions. His mother had to assist for most of the application. He took a long time to respond, many awkward pauses during the application."), testimony that Plaintiff received assistance from an in-home nurse for four hours daily, Tr. 45-48, and Plaintiff's participation at a mental health day program for psychiatric rehabilitation services, Tr. 45, 847. As a threshold matter, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)) (quotation marks removed). However, in light of the ALJ's erroneous assertion of the record regarding Plaintiff's hospitalizations, the ALJ can determine on remand whether this other evidence should be more explicitly considered or discussed.

Second, Plaintiff argues that the ALJ's failure to define the term "non-production job tasks" constitutes reversible error. ECF 14-1 at 6-9. For support, Plaintiff cites to *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), in which the Fourth Circuit held that the ALJ's failure to define "production rate or demand pace" frustrated appellate review of whether the RFC properly accounted for the plaintiff's limitations. *Id.* at 312; *see also Perry v. Berryhill*, 765 F. App'x 869, 873 (4th Cir. 2019) (unpublished) (remanding for ALJ's failure to define "non-production oriented work setting").

Here, the ALJ limited Plaintiff to "simple, repetitive non-production job tasks in a low stress environment." Tr. 14. The ALJ explicitly noted the Fourth Circuit's decision in *Mascio v. Colvin* and explained that these limitations specifically addressed Plaintiff's moderate limitation in concentration, concentration, or pace, and that the evidence demonstrated that Plaintiff could remain on task while performing jobs with such limitations. Tr. 17; *see Mascio*, 780 F.3d at 638 (emphasizing the distinction between the ability to perform simple tasks and the ability to stay on task, and explaining that a restriction to unskilled work does not account for a claimant's moderate difficulties in concentration, persistence, or pace).

The term "non-production job tasks" appears to be analogous to the term deemed problematic in *Thomas*.[1] The Commissioner argues that *Thomas* is "inapplicable here because the meaning of, and reason for limiting Plaintiff to, 'repetitive non-production job tasks in a low stress environment' is clear." ECF 17-1 at 6 (citation removed). However, the substance of the Commissioner's argument defends the ALJ's finding that Plaintiff had a moderate limitation in concentration, *id.* at 7, and does not answer Plaintiff's challenge to the ALJ's usage of the undefined term. Given the Fourth Circuit's discussion of the phrases "production rate" or "demand pace" in *Thomas*, 916 F.3d at 312, this Court cannot adequately say whether the ALJ's inclusion of "non-production job tasks" in the RFC limitation was harmless.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, ECF 14, and Defendant's Motion for Summary Judgment, ECF 17, will be denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment will be reversed in part due to inadequate analysis, and the case will be remanded for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

                              Sincerely yours,

                              /s/

                              Deborah L. Boardman
                              United States Magistrate Judge

---

[1] The Court notes that the RFC limitation in this case may actually be more ambiguous than that in *Thomas*. In *Thomas*, the RFC provision restricting the claimant from "production rate or demand pace" jobs was clearly intended to impose a limitation on the pace or rate of work. Here, "non-production job tasks" could just as well refer to the type of work, rather than the pace. Without any explanation from the ALJ, the Court is unable to understand the purpose and assess the sufficiency of the RFC limitation.